UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| DEBBIE K. CARSON, | ) | CASE NO. C07-1501-JCC |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | REPORT AND RECOMMENDATION |
| | ) | RE: SOCIAL SECURITY |
| MICHAEL J. ASTRUE, | ) | DISABILITY APPEAL |
| Commissioner of Social Security, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

Plaintiff Debbie K. Carson proceeds through counsel in her appeal of a final decision of the Commissioner of the Social Security Administration (Commissioner). The Commissioner denied plaintiff's applications for Disability Insurance (DI) and Supplemental Security Income (SSI) benefits after a hearing before an Administrative Law Judge (ALJ). Having considered the ALJ's decision, the administrative record (AR), and all memoranda of record, the Court recommends that this matter be REMANDED for further administrative proceedings.

/ / /

/ / /

/ / /

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -1

**FACTS AND PROCEDURAL HISTORY**

Plaintiff was born on XXXX, 1958.[1] She completed the ninth grade of high school. (AR 110.) Plaintiff previously worked as a warehouse order puller and electronic assembler supervisor. (AR 105.)

Plaintiff filed DI and SSI benefits applications in April 2003. (AR 89-91, 318A-318C.) She alleged disability beginning May 30, 2002 based on a spinal injury. (AR 104.) Her applications were denied at the initial level and on reconsideration, and she timely requested a hearing.

Between April 2005 and August 2006, ALJ Hayward Reed held four hearings in this matter, taking testimony from plaintiff, medical experts Paul Bach and George Weilepp, and vocational expert Anne Aastum. (AR 322-465.) On October 5, 2006, the ALJ issued a decision finding plaintiff not disabled. (AR 28-41.)

Plaintiff timely appealed. The Appeals Council denied plaintiff's request for review on April 27, 2007 (AR 11-14), making the ALJ's decision the final decision of the Commissioner. Plaintiff appealed this final decision of the Commissioner to this Court.

**JURISDICTION**

The Court has jurisdiction to review the ALJ's decision pursuant to 42 U.S.C. § 405(g).

**DISCUSSION**

The Commissioner follows a five-step sequential evaluation process for determining

---

[1] Plaintiff's date of birth is redacted back to the year of birth in accordance with the General Order of the Court regarding Public Access to Electronic Case Files, pursuant to the official policy on privacy adopted by the Judicial Conference of the United States.

01  whether a claimant is disabled. *See* 20 C.F.R. §§ 404.1520, 416.920 (2000). At step one, it must

02  be determined whether the claimant is gainfully employed. The ALJ found plaintiff had not

03  engaged in substantial gainful activity since her alleged onset date. At step two, it must be

04  determined whether a claimant suffers from a severe impairment. The ALJ found plaintiff's

05  degenerative disc disease, bilateral hip dysplasia, facet arthritis, bulging disc at C3-4, obesity,

06  chronic pain syndrome, and depressive disorder (not otherwise specified) severe. Step three asks

07  whether a claimant's impairments meet or equal a listed impairment. The ALJ found that

08  plaintiff's impairments did not meet or equal the criteria for any listed impairment.

09      If a claimant's impairments do not meet or equal a listing, the Commissioner must assess

10  residual functional capacity (RFC) and determine at step four whether the claimant has

11  demonstrated an inability to perform past relevant work. The ALJ assessed the following RFC:

12-19  [C]laimant has the [RFC] to occasionally lift or carry 20 pounds, frequently lift or carry 10 pounds, stand and/or walk (with normal breaks) for a total of about 6 hours in an 8 hour workday and sit (with normal breaks) for a total of about 6 hours in an 8 hour workday. She must be allowed to change positions at least every 4 hours to relieve pain. She has an unlimited ability to push or pull with her upper and lower extremities. She can occasionally balance, crawl, stoop, crouch and kneel. She can frequently climb stairs. She can occasionally climb ladders, ropes or scaffolds. She has no communicative, visual or manipulative limitations except for a limited occasional ability to reach overhead. She should avoid concentrated exposures to extreme cold, vibration, humidity and unprotected heights. She should not drive due to limitations in maintaining concentration, pace and persistence. Specifically, her ability to understand and remember detailed instructions is slightly limited, and her ability to carry out such instructions is markedly limited, though not precluded. She has no limitations in understanding, remembering or carrying out short and simple instructions.

20  (AR 34.)

21  The ALJ determined plaintiff was able to return to her past relevant work as an electronics

22  assembler and order puller. If a claimant demonstrates an inability to perform past relevant work,

01 the burden shifts to the Commissioner to demonstrate at step five that the claimant retains the

02 capacity to make an adjustment to work that exists in significant levels in the national economy.

03 As an alternative finding, the ALJ found plaintiff could perform other work existing in the national

04 economy, such as work as an assembler.

05 This Court's review of the ALJ's decision is limited to whether the decision is in

06 accordance with the law and the findings supported by substantial evidence in the record as a

07 whole. *See Penny v. Sullivan*, 2 F.3d 953, 956 (9th Cir. 1993). Substantial evidence means more

08 than a scintilla, but less than a preponderance; it means such relevant evidence as a reasonable

09 mind might accept as adequate to support a conclusion. *Magallanes v. Bowen*, 881 F.2d 747, 750

10 (9th Cir. 1989). If there is more than one rational interpretation, one of which supports the ALJ's

11 decision, the Court must uphold that decision. *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir.

12 2002).

13 Plaintiff argues that the ALJ erred in not according more weight to the opinions of treating

14 physician Dr. Dale Alsager, in failing to address her skin condition, in assessing her complaints of

15 pain, and in considering evidence not offered at the hearing or otherwise included in the record.

16 She requests remand for an award of benefits or, alternatively, for further administrative

17 proceedings. The Commissioner argues that the ALJ's decision is supported by substantial

18 evidence and should be affirmed. For the reason described below, the undersigned recommends

19 that this matter be remanded for further administrative proceedings.

20 <center>Physicians' Opinions</center>

21 In general, more weight should be given to the opinion of a treating physician than to a

22 non-treating physician, and more weight to the opinion of an examining physician than to a non-

01  examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996). Where not contradicted

02  by another physician, a treating or examining physician's opinion may be rejected only for "'clear

03  and convincing'" reasons. *Id.* (quoting *Baxter v. Sullivan*, 923 F.2d 1391, 1396 (9th Cir. 1991)).

04  Where contradicted, a treating or examining physician's opinion may not be rejected without

05  "'specific and legitimate reasons' supported by substantial evidence in the record for so doing."

06  *Id.* at 830-31 (quoting *Murray v. Heckler*, 722 F.2d 499, 502 (9th Cir. 1983)).

Plaintiff first argues that the ALJ erred in his assessment of the opinions of her treating physician, Dr. Dale Alsager. She notes that the ALJ gave little weight to this physician's opinion while giving significant weight to the opinions of examining physician Dr. James Burton and non-examining medical expert Dr. George Weilepp.

The ALJ assessed the opinions of these physicians as follows:

> On May 20, 2005, the claimant was examined by Dr. James Burton, an orthopedic specialist who performed a consultative examination. Dr. Burton reviewed the claimant's medical records from the alleged onset of disability to the date of his examination. Of note, Dr. Burton had previously examined the claimant in February 2004.
>
> During his May 2005 examination, Dr. Burton noted that the claimant demonstrated subjective pain behaviors with extensive moaning and groaning and suboptimum effort throughout. He noted that she had full active and passive ranges of motion of the shoulder, elbow and wrist with normal fine and gross finger motion. Hip, knee and ankle ranges of motion were normal. No atrophy existed in the thigh or calf. Straight leg raising tests were negative. The claimant did exhibit suboptimum flexion and muscle strength with generalized tenderness throughout her back. However, when compared to x-rays taken that date of her cervical and lumbar areas, Dr. Burton could find no objective evidence to explain the claimant's extreme complaints. An arthritic screening panel taken that date was normal. He opined that the claimant had mild degenerative disc disease of the cervical and lumbar region with a bulging disc in the thoracic spine. He also opined that she had chronic pain syndrome and depression.
>
> During his February 2004 examination, Dr. Burton noted that the claimant exhibited significant subjective pain behaviors with extensive moaning and groaning. He noted

that she was tender over her entire neck, shoulder and back with very light palpitation similar to a feather touch. He studied spinal x-rays taken in 2002 and noted that the findings were not at all compatible with her subjective complaints. He opined that the claimant had a very strong indication of injury and disability conviction.

Dr. George Weilepp, orthopedic surgeon and consultative examiner, testified at the hearing that the objective medical evidence did not support the claimant's subjective allegations. He opined that she could perform basic work activities within the residual functional capacity assessment assigned above.

Dr. Dave Alsager, treating source, examined the claimant on April 28, 2006 and May 30, 2006. While these visits qualify the doctor as having a treating relationship with the claimant, the treatment history is quite brief. Nonetheless, based on these examinations, Dr. Alsager concluded that the claimant had 16 severe impairments including: chronic regional pain syndrome, lymphadenopathy, ankylosing spondylopathy, stenosis of the thoracic spine, regional scoliosis, degenerative joint disease, diabetes mellitus, hyperlipidemia, truncal obesity and peripheral neuropathy of the feet and hands.

Dr. Alsager apparently relied quite heavily on the subjective report of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what she reported. Yet, as explained elsewhere in the decision, there exist good reasons for questioning the reliability of the complainant's subjective complaints. Further, Dr. Alsager's opinion is quite conclusory, providing little explanation of the evidence relied on in forming that opinion. For instance, he notes that the claimant has "interspinous ligament calcification such as found in early ankylosing spondylopathy which is consistent with her complaints of stiffness and pain throughout the spinal column." Yet, he notes that his findings are not yet complete, and that his [sic] more diagnostic works will have to be done.

A Form HA-1151 (Medical Source Statement of Ability to Perform Work Related Activities) was completed by Dr. Alsager on June 15, 2006. In it, Dr. Alsager states that the claimant can never lift more than 10 pounds, must use a double cane or walker to ambulate, can never balance, climb, kneel, crouch, crawl or stoop and has a limited ability to push, pull or manipulate. This level of impairment is markedly different from any other medical source, which renders it less than persuasive. In addition, Dr. Alsager's opinion is without substantial support from the other evidence of record, which renders it less than persuasive. For instance, David L. Rogers, D.C. and treating source, noted in August 2002 that the claimant was able to ambulate with a normal gait, and was able to rise on her toes and heels. These findings are consistent with Dr. Burton's May 2005 examination. Yet, Dr. Alsager opines that the claimant can never balance and must use a double cane or walker to ambulate. Clearly, Dr. Alsager's findings are inconsistent with the records as a whole in this

regard, and are not persuasive.

Dr. Weilepp reviewed the findings of Dr. Alsager and testified that he did not concur with many of his conclusions. He specifically noted a lack of objective medical evidence to corroborate Dr. Alsager's diagnoses. Specifically, Dr. Weilepp testified that Dr. Alsager had diagnosed the claimant with diabetes mellitus despite no lab findings or objective findings to make such a diagnosis. Further, Dr. Weilepp noted that Dr. Alsager performed a CT scan of the claimant's left hip. Based upon the imaging, Dr. Alsager noted interarticular stranding of the synvoial lining and cartilage of the femoral head and acetabular cap. He noted that these findings were consistent with rheumatoid arthritis or other joint pathology, and stated that further clinical findings were necessary. He also opined that bursitis was present, although clinical correlation was recommended. Additionally, Dr. Weilepp was critical of Dr. Alsager's conducting his own imaging studies, explaining that normal medical practice calls for procurement of same from a separate qualified radiologist.

Dr. Weilepp testified that several of Dr. Alsager's opinions and diagnoses contained conclusory statements, and noted that the recommended "clinical correlation" was never completed. As such, the undersigned finds them less than persuasive.

In addition, the undersigned notes that Dr. Alsager's license to practice osteopathic medicine and surgery in the State of Washington was restricted on August 8, 2006, by the State of Washington Department of Health, pending a hearing. Specifically, he is prohibited from prescribing Schedule II or Schedule III controlled substances. The State of Washington alleges that Dr. Alsager prescribed the strongest dose of Duragesic patch available, along with oxycodone and valium, to a patient who lacked sufficient documented opiod tolerance. The State alleges that valium acts synergistically with opiods, magnifying the amount of respiratory depression that occurs in a patient. According to the State, the medications prescribed by Dr. Alsager to this patient, even if taken as prescribed, created a predictable potential for overdose. On September 15, 2005, one day after receiving his prescription, the patient died from acute intoxication due to the combined effects of fentanyl, diazepam, oxycodone and carbamezepine.

The evidence came to light approximately one week after the hearing and was submitted to claimant's counsel on August 21, 2006. The undersigned notes the claimant's written objection to the inclusion of this evidence into the record, yet finds the evidence is relevant in the instant case because Dr. Alsager prescribed oxycodone to the claimant. The claimant testified that this medication causes drowsiness and an inability to maintain concentration, pace and persistence. Because Dr. Alsager can no longer prescribe oxycodone to the claimant, as of 7 days after the hearing in this matter, the alleged side effects of oxycodone are no longer material or relevant to the determination of the claimant's [RFC]. As such, the claimant's objection is overruled

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -7

01     and this evidence is admitted into the record[.]

02     . . .

03     In conclusion, the opinions of Drs. Burton and Weilepp are given significant weight. Both opined that the objective medical evidence did not support the claimant's allegations of severe and disabling pain. They opined that she could perform work within the [RFC] assessment stated above. In addition, both are orthopedic physicians with expertise regarding the physical impairments claimed herein. . . .

06     The opinion of Dr. Alsager is given little weight based on the many reasons stated above, with significance placed on the lack of objective medical evidence for his many findings, and his conclusory opinions which lack the "clinical correlation" he recommends. Therefore, pursuant to SSR 96-2p, Dr. Alsager's opinion is not given controlling weight because it is not supported by medically acceptable clinical and laboratory findings and is very inconsistent with the other substantial evidence in the record. Furthermore, as of August 8, 2006, the claimant's oxycodone prescription from Dr. Alsager is invalid. Side effects from this drug are therefore moot.

11 (AR 35-38; internal citations to record omitted.)

12     Plaintiff asserts that the ALJ failed to consider the diagnostic tests performed by Dr. Alsager. (AR 272-300.) She further states that, while noting that Dr. Weilepp did not concur with many of Dr. Alsager's conclusions and indicated a lack of objective evidence to support the diagnoses, only certain diagnoses were mentioned, such as diabetes mellitus. Plaintiff also takes issue with the ALJ's reliance on Dr. Weilepp's criticism of Dr. Alsager for conducting his own imaging studies, noting that Dr. Weilepp conceded that he, at times, reads his own imaging studies without consulting a radiologist. (AR 433.) Plaintiff further contends that the ALJ failed to consider the evidence in the record supportive of Dr. Alsager's opinions, including Dr. Rogers' early assessment of plaintiff and a 2002 U.S. HealthWorks evaluation prepared for the State of Washington. (AR 164-65 (June 2002 report from Dr. Rogers following work injury) and AR 185-90 (U.S. HealthWorks documents from December 2002 reflecting marked degenerative disc

01 disease, an inability to return to work as a laborer, an exertional level of work between sedentary
02 and severely limited, and an inability to return to at least half-time work for 52 weeks).)
03 　　　　In sum, plaintiff argues that the ALJ failed to provide specific and legitimate reasons for
04 rejecting the opinions of Dr. Alsager, and improperly relied almost exclusively on the results of
05 a single consultative examination as opposed to the extensive medical record and opinions of the
06 treating physician. However, with the exception of plaintiff's skin condition, as discussed below,
07 plaintiff fails to demonstrate reversible error in the ALJ's assessment of the physicians' opinions.
08 　　　　Given the existence of contradictory opinions, the ALJ was required to provide specific
09 and legitimate reasons for giving little weight to the opinions of Dr. Alsager. The reasons given
10 here appropriately included Dr. Alsager's apparent reliance on plaintiff's subjective complaints and
11 lack of supporting objective medical evidence, the conclusory and incomplete nature of his
12 opinions, and the inconsistency with and lack of support from other evidence in the record.[2] *See*
13 Social Security Ruling (SSR) 96-2p ("It is an error to give an opinion controlling weight simply
14 because it is the opinion of a treating source if it is not well-supported by medically acceptable
15 clinical and laboratory diagnostic techniques or if it is inconsistent with the other substantial
16 evidence in the case record.")
17 　　　　While the ALJ did not specifically discuss the diagnostic tests performed by Dr. Alsager,
18 he did not necessarily ignore that evidence. Instead, he found a lack of objective medical evidence
19 to support Dr. Alsager's findings, deemed Dr. Alsager's opinions conclusory, and noted that lack
20 of "'clinical correlation'" Dr. Alsager recommended. (AR 38.) He supported these conclusions

21
22 　　[2] The issue concerning the restriction on Dr. Alsager's license to practice medicine is discussed separately below.

01 with reference to Dr. Burton's findings during two examinations and Dr. Weilepp's testimony as

02 to the absence of supporting objective medical evidence. (AR 35-36.) He also acknowledged the

03 diagnostic tests performed in pointing to Dr. Weilepp's criticism of Dr. Alsager's practice of

04 conducting his own imaging studies. On that note, while Dr. Weilepp did concede upon

05 questioning that there were times when he read and understood an imaging study without

06 consulting a radiologist, the tenor of his overall testimony on this subject was clear. That is, Dr.

07 Weilepp distinguished the value of such evidence in the absence of a reading by a radiologist. (AR

08 422-25 (discussing absence of reading by a radiologist) and AR 432-33 ("... I didn't discount [the

09 x-rays], number one. I made comment about his qualification to read x-rays. Orthopedists read

10 x-rays, everybody reads x-rays. The level of impact on what the reading is versus the objective

11 evidence by a radiologist is quite different frequently. I can't make that comparison. I just stated

12 that, that his reading is actually a radiographic reading which puts me in a position to marginate

13 the impact of his implications."; "Yeah, [I read imaging studies], but I read it either with a

14 radiologist or if I have a question it's with the radiologist or it's in combination with the

15 radiologist report and that's very specific and much more, truthfully much more diagnostic in what

16 an orthopedist or a neurosurgeon can, can read. Frequently the reading is different."))

17   Nor did the ALJ err in focusing on Dr. Weilepp's testimony that there was no objective

18 support for Dr. Alsager's findings as to diabetes mellitus. A review of Dr. Weilepp's testimony

19 reveals that this was but one example of a finding for which Dr. Weilepp found a lack of objective

20 support. (AR 422-26.) It was not inappropriate for the ALJ to utilize a single example. Also, the

21 ALJ went on to note, with respect to two other of Dr. Alsager's findings, that he deemed further

22 clinical findings necessary and clinical correlation recommended. (AR 36.)

01    Finally, neither Dr. Rogers' June 2002 report or the December 2002 U.S. HealthWorks

02 evaluation undermines the ALJ's assessment of Dr. Alsager.  The ALJ found Dr. Alsager's

03 opinions "without substantial support from other evidence of record," (AR 36, 38), not a complete

04 absence of other evidence in the record that could be construed as supportive of plaintiff's claims.

05 Also, while the ALJ did not mention Dr. Rogers' June 2002 report, made shortly after plaintiff

06 experienced a workplace injury and her alleged disability onset, he did mention a subsequent

07 August 2002 report from Dr. Rogers in which plaintiff was found "able to ambulate with a normal

08 gait, and . . . able to rise on her toes and heels."  (AR 26 (citing AR 293-94).)

09    With the exception of the issue discussed below, the ALJ appropriately assessed the

10 physicians' opinions in this case.  Plaintiff fails to demonstrate reversible error.

## Skin Condition

12    Plaintiff asserts that the ALJ failed to fully consider or even mention her disabling skin

13 rash.  She points to records from Dr. Alsager discussing this condition.  (AR 283-90, 298-300,

14 319-22.)  Dr. Alsager states in one document:

15  Ms. Carson suffers from painful skin lesions on multiple body regions. . . .  Etiology is uncertain.  Specialized testing is continuing.  Infection has not been ruled out.  It
16  may be contagious.  This px can not work with this condition or seek employment with this repulsive, painful, puritic condition.  It is chronic and unresponsive to
17  reasonable dermatological treatment.

18 (AR 298.)  Plaintiff contends that the failure to address this condition is a clear failure of the ALJ

19 to fully investigate the facts and develop arguments both for and against the grant of benefits.  *See*

20 *Sims v. Apfel*, 530 U.S. 103, 110-11 (2000) ("Social Security proceedings are inquisitorial rather

21 than adversarial. It is the ALJ's duty to investigate the facts and develop the arguments both for

22 and against granting benefits[.]") (citing *Richardson v. Perales*, 402 U.S. 389, 400-01 (1971)).

01 She argues that this error necessitates, at a minimum, remand for further development.

02 While conceding that the ALJ did not evaluate this skin condition, the Commissioner notes
03 that tests were negative to determine an accurate diagnosis. (AR 283-86.) The Commissioner
04 further points to Dr. Weilepp's testimony on this issue. Dr. Weilepp found Dr. Alsager's
05 assessment that this condition was disabling not supported by the evidence and opined that the
06 condition resembled furunculosis, which was usually short term when properly treated. (AR 434.)
07 The Commissioner argues that, because the credible evidence of record fails to establish that this
08 condition imposed any work-related functional limitations, the failure to address it was harmless.
09 *See Stout v. Barnhart*, 454 F.3d 1050, 1056 (9th Cir. 2006) (error deemed inconsequential to
10 ultimate nondisability determination may be deemed harmless).

11 In reply, plaintiff points to Dr. Weilepp's testimony on this topic in full, asserting that the
12 testimony is confusing and clearly insufficient for the purpose of rejecting Dr. Alsager's opinion:

> I'm not a dermatologist. I would imagine that a rash of that severity duration was not well defined as to how long, what treatment, and what results given has occurred, I do not think that, I can't imagine nor can I support from the documents that were given to me that the patient is disabled by a disfigurement of the degree that is provided in the record that I reviewed including the, the appearance by a photograph of some representation of those issues. All I can do is look at the records that are sent to me and give you my opinion. There are, there are neurological problems that are somewhat intermittently significantly involved in functioning and whether this, that significance is not well defined in the records that were provided in that area either by a dermatologist or by, by defined treatment or by defined objective pictures as were attempted to be provided to me and I have in front of me. It looks like furunculosis which, which is a problem but it's usually as limited, limited by treatment and is short term. Now, whether it's years and years of furunculosis may be related to other issues of, of chemically and, and dietary or inflammatory issues that are managed in some less than perfect, less than adequate way, I don't know.

21 (AR 434.) Plaintiff further avers that the lack of an accurate diagnosis is irrelevant when the
22 condition is disabling.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -12

01    Plaintiff testified about this condition in the June 2006 hearing. (AR 372-73.) She

02 described painful lesions on multiple parts of her body, stated that medication made the pain "ease

03 up[]", and indicated that laboratory testing was continuing to confirm a diagnosis. (*Id.*)

04    While the ALJ sufficiently assessed Dr. Alsager's opinions as a whole, the failure to

05 mention plaintiff's skin condition, particularly at step two, presents a reversible error. This is not

06 to say that the evidence necessarily supports a step two severity finding for this condition. [3]

07 However, given the evidence in the record and plaintiff's testimony, the ALJ's failure to even

08 mention the skin condition necessitates further administrative proceedings.

09                                    <u>Credibility</u>

10    Absent evidence of malingering, an ALJ must provide clear and convincing reasons to

11 reject a claimant's testimony. *See Vertigan v. Halter*, 260 F.3d 1044, 1049 (9th Cir. 2001). In

12 finding a social security claimant's testimony unreliable, an ALJ must render a credibility

13 determination with sufficiently specific findings, supported by substantial evidence. "General

14 findings are insufficient; rather, the ALJ must identify what testimony is not credible and what

15 evidence undermines the claimant's complaints." *Lester*, 81 F.3d at 834. "In weighing a

16 claimant's credibility, the ALJ may consider his reputation for truthfulness, inconsistencies either

---

[3] At step two, a claimant must make a threshold showing that her medically determinable impairments significantly limit her ability to perform basic work activities. *See Bowen v. Yuckert*, 482 U.S. 137, 145 (1987) and 20 C.F.R. §§ 404.1520(c), 416.920(c). "Basic work activities" refers to "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. §§ 404.1521(b), 416.921(b). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (quoting Social Security Ruling (SSR) 85-28). "[T]he step two inquiry is a de minimis screening device to dispose of groundless claims." *Id.* (citing *Bowen*, 482 U.S. at 153-54). An ALJ is also required to consider the "combined effect" of an individual's impairments in considering severity. *Id.*

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -13

01 in his testimony or between his testimony and his conduct, his daily activities, his work record, and

02 testimony from physicians and third parties concerning the nature, severity, and effect of the

03 symptoms of which he complains." *Light v. Social Sec. Admin.*, 119 F.3d 789, 792 (9th Cir.

04 1997).

05     The ALJ noted plaintiff's alleged inability to lift any weight, stand or walk for more than

06 ten minutes, sit for more than fifteen minutes, climb stairs, kneel, squat, or reach overhead. (AR

07 34 (also stating: "She states that if she performs any of these maneuvers, her spine and pelvis will

08 dislocate.")) He found that, while plaintiff's impairments could reasonably be expected to produce

09 the alleged symptoms, her statements concerning the intensity, persistence, and limiting effects of

10 those symptoms were not entirely credible. (AR 34.) The ALJ then found that the objective

11 findings "failed to provide strong support" for her allegations and did not support limitations

12 greater than those assessed in the RFC, and thereafter reviewed the medical evidence. (AR 34-

13 38.) In addition to the medical evidence review excerpted above, the ALJ assessed evidence

14 pertinent to plaintiff's mental health:

> In regards to depression, Susan Day, Ph.D., consultative examiner, performed a psychological evaluation on the claimant in November 2005 which included a clinical interview, Miller Forensic Assessment Test (M-FAST) and a Test of Memory Malingering (TOMM). Dr. Day concluded the claimant had a depressive disorder (not otherwise specified). She also noted that the claimant's score on the TOMM was 36 on trial I and was 31 on trial II which indicated the possibility of malingering. She noted that these scores were lower than individuals who have bona fide cognitive impairment due to traumatic brain injury and dementia. Because the claimant had no organic brain trauma or dementia, Dr. Day questioned the veracity of the claimant's self report and suggested that she was not putting forth maximum effort. She opined that the claimant had no psychological impairment which would interfere with the claimant's future employability.
>
> In interrogatories given to Dr. Day in March 2006, she noted that a somatoform disorder was considered in her evaluation, but was ruled out based on the claimant's

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -14

exaggerated symptoms during the clinical interview and TOMM test. She opined that these exaggerations made it difficult to accurately assess the claimant, and noted that all somatoform disorders are ruled out when clinicians suspect that symptoms are exaggerated or feigned. Dr. Day opined from her evaluation that the presence of secondary gain was relevant in regards to this claimant.

Paul Bach, Ph.D. and medical expert, testified at the hearing that the claimant's pain level would make it difficult for her to maintain employment, and he opined that her prescribed pain medications, specifically oxycodone, would cause a marked limitation in ability to maintain concentration, pace and persistence. He also stated that the side effects of the medication would cause a marked limitation in her ability to follow detailed instructions. Finally, he disagreed with Dr. Day's opinion regarding somatoform disorders. He stated that the TOMM test given to the claimant measured cognitive ability, and did not accurately assess malingering or pain.

However, the undersigned notes that Dr. Bach is a licensed psychologist in Montana and Idaho, unable to prescribe medications. Therefore, his opinion regarding side effects of medications appears to rest, at least in part, outside his area of expertise. In addition, because Dr. Alsager can no longer prescribe oxycodone to the claimant, the side effects are moot.

Further, Dr. Weilepp was informed of the patient's medications and offered no opinion on possible side effects because the medical evidence in regard to side effects was not clearly defined by treating medical sources. Dr. Weilepp only opined that the claimant should not undertake driving due to a moderate inability to maintain concentration. In any event, Dr. Weilepp testified that the drugs prescribed to the claimant would not be taken for long periods of time. As of August 8, 2006, the claimant's oxycodone prescription from Dr. Alsager is no longer valid.

Further, Dr. Bach's opinion in regards to claimant's malingering or motivation for secondary gain is given little weight. Dr. Day's assessment resulted from two clinical interviews and cognitive testing. Although Dr. Bach testified that he did not believe cognitive test results could measure malingering in regards to physical pain, the undersigned gives significant weight to Dr. Day's opinion that the test results raise significant questions regarding the claimant's veracity. Of note, Dr. Bach did not disagree with Dr. Day in regards to the presence of secondary gain in this instance. He testified that secondary gain was present in all Social Security disability cases.

. . . Dr. Day's opinion is also given significant weight in regards to the claimant having no psychological impairment which would preclude employment. Her analysis was the result of two clinical interviews and several psychological tests, whereas Dr. Bach never analyzed the claimant personally.

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -15

01 . . .

02 The opinion of Dr. Bach in regards to the side effects of medications taken by the claimant is given little weight. As stated above, Dr. Bach is not a medical doctor and
03 cannot prescribe medications, and the claimant is no longer prescribed oxycodone by Dr. Alsager. The remainder of his testimony, with the exceptions noted, is given
04 significant weight.

05 (AR 37-38.) Subsequently, the ALJ concluded:

06 The claimant's subjective complaints and alleged symptoms have been considered by the undersigned, but her allegations are not supported by the objective medical
07 evidence or her activities of daily living. For instance, the claimant told Marsha McFarland, Ph.D., consultative examiner, that she had a decrease in daily activities
08 due to pain, but could cook, clean and had normal sexual activity. Several medical sources cited herein have noted the claimant's normal gait, strength and range of
09 motion. They have also noted plaintiff's exaggerated pain symptoms coupled with a lack of objective medical evidence to support the claimant's allegations. As such, the
10 undersigned finds the claimants [sic] allegations less than credible under SSR 96-7p.

11 (AR 38.)

12 Plaintiff cites to the two-step process described in SSR 96-7p, requiring the ALJ to, first,

13 determine whether the underlying medical condition could be reasonably expected to produce the

14 individual's pain or other symptoms and, second, to evaluate the intensity, persistence, and limiting

15 effects of the symptoms to determine the extent the symptoms limit the claimant's ability to

16 perform basic work activities. Where a claimant's statements on the latter issues are not

17 substantiated by objective medical evidence, the ALJ makes a credibility finding based on the

18 record, including "the medical signs and laboratory findings, the individual's own statements about

19 the symptoms, any statements and other information provided by treating or examining physicians

20 or psychologists and other persons about the symptoms and how they affect the individual, and

21 any other relevant evidence in the case record." SSR 96-7p. As reflected above, a variety of other

22 factors may be considered, such as a claimant's activities. *Id*. (citing 20 CFR §§ 404.1529(c) and

416.929(c)). Plaintiff also notes that an ALJ may not reject pain testimony based solely on a lack of corroborating objective medical evidence. *See*, *e.g.*, *Moisa v. Barnhart*, 367 F.3d 882, 885 (9th Cir. 2004).

Plaintiff avers that the ALJ failed to determine whether her pain could be reasonably expected to result from her multiple severe conditions and failed to evaluate the limiting effects of her symptoms by fully considering her testimony and the evidence from her treating physician, as well as other types of information which can be used to assess credibility. Specifically, she avers that the ALJ failed to consider the nature and duration of her pain symptoms and her ongoing treatment, including pain medication, and failed to offer any valid evidence of malingering, reputation for dishonesty, conflicts between her testimony and her conduct, or internal contradictions in her testimony. Plaintiff points to her testimony that she was restricted to a reclining position for six hours a day, required assistance for all household chores other than a single, simple meal preparation a day, and used a cane. She describes the only identified conflict in her testimony, as found in the report from Marsha McFarland, as ambiguous at best. She further rejects the reliance on Dr. Day's opinions as to the TOMM score, pointing to Dr. Bach's contrary testimony (*see* AR 449) and a case in which a district court questioned the relevance of a TOMM score, *see United States v. Nelson*, 419 F. Supp. 2d 891, 902 (E.D. La. 2006).

As argued by the Commissioner, plaintiff fails to demonstrate reversible error in the credibility assessment. The ALJ specifically spelled out the two-step assessment called for by SSR 96-7p, albeit in a pro forma manner. (AR 34.) He also appropriately relied on the minimal amount of corroborating objective medical evidence as one of several reasons for finding plaintiff less than fully credible. *See*, *e.g.*, *Burch v. Barnhart*, 400 F.3d 676, 680 (9th Cir. 2005) (ALJ can

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -17

01   rely on minimal objective findings, where other reasons are present, as undermining a claimant's

02   credibility); *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001) (medical evidence is "still a

03   relevant factor in determining the severity of the claimant's pain and its disabling effects.")  The

04   ALJ considered a number of other pertinent factors, including issues associated with plaintiff's

05   medication, possible evidence of malingering, the issue of secondary gain, plaintiff's daily

06   activities, exaggerated pain behaviors, and objective evidence contrary to her contentions.  While

07   the ALJ could have pointed to other factors or given additional examples, he was not required to

08   do so.

09        Additionally, the ALJ provided sufficient reasoning for preferring portions of the opinions

10   of Dr. Day over those of Dr. Bach, and the case cited by plaintiff with respect to the TOMM score

11   is largely inapposite. *See Nelson*, 419 F. Supp. 2d at 902 (in a pretrial criminal hearing addressing

12   mental competency, the court was skeptical as to the usefulness of a TOMM score in determining

13   effort level where that test was administered a month after an IQ test being considered; ". . . the

14   TOMM only provides information on how Nelson performed on the TOMM.")  In fact, while

15   questioning the usefulness of a TOMM score given an issue of timing, the court in that case

16   acknowledged that "there may be an argument that it is has some utility in discerning effort levels

17   on tests taken near to it in time[.]" *Id.*

18        The ALJ provided clear and convincing reasons for finding plaintiff less than fully credible.

19   Therefore, the ALJ need only reconsider plaintiff's credibility if that assessment is implicated on

20   remand for consideration of plaintiff's skin condition.

21                    <u>Consideration of Evidence Not Included in the Record</u>

22        In plaintiff's final argument, she contends that the ALJ erred in considering evidence not

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -18

01 offered at the hearing or otherwise included in the record, specifically, the evidence related to the
02 restriction on Dr. Alsager's license to practice medicine.     *See* 20 C.F.R. § 404.953(a) ("The
03 administrative law judge shall issue a written decision that gives the findings of fact and the
04 reasons for the decision. The decision must be based on evidence offered at the hearing or
05 otherwise included in the record.") Plaintiff asserts that, in addition to the issue of side effects, the
06 ALJ clearly considered this issue in assessing the credibility of Dr. Alsager's opinions. She notes,
07 as acknowledged by the ALJ, that Dr. Alsager's license was only restricted pending a hearing.
08 (*See* AR 36.)  Plaintiff further asserts that this situation does not involve her and is irrelevant to
09 the case at bar, and that the record does not specifically indicate that Dr. Alsager was the physician
10 who prescribed her oxycodone.

11        The Commissioner contends that the ALJ only considered this evidence for the limited and
12 legitimate purpose of evaluating the side effects of oxycodone and the fact that such side effects
13 were no longer in effect.  (*See* AR 37.)  He rejects the assertion that the ALJ also considered this
14 issue in determining the weight accorded to the opinions of Dr. Alsager.

15        As maintained by the Commissioner, the ALJ limited his consideration of this issue to the
16 side effects of plaintiff's medication, as opposed to his assessment of the opinions of Dr. Alsager.
17 (*See* AR 37-38.)  He specifically stated that he found the evidence "relevant in the instant case
18 because Dr. Alsager prescribed oxycodone to the claimant[,]" overruled plaintiff's objection, and
19 admitted the evidence into the record. (AR 37.)  The ALJ's limited consideration of this evidence
20 was appropriate.  That is, if plaintiff is no longer taking the medication, the side effects from that
21 medication are no longer relevant.  Also, contrary to plaintiff's contention, the record does contain
22 evidence – a form completed by plaintiff – that Dr. Alsager was the prescribing doctor for the

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -19

oxycodone. (AR 158.) Accordingly, plaintiff fails to demonstrate error in the consideration of the evidence related to Dr. Alsager's license.

## CONCLUSION

For the reason set forth above, this matter should be remanded for further administrative proceedings. Beginning at step two, the ALJ should consider the evidence related to plaintiff's skin condition.

DATED this 24th day of April, 2008.

_____
Mary Alice Theiler
United States Magistrate Judge

REPORT AND RECOMMENDATION RE:
SOCIAL SECURITY DISABILITY APPEAL
PAGE -20